**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| LIGHT & WONDER, INC., | |
| Plaintiff, | |
| v. | Case No.  25-cv-901 |
| TWIN STATES MUSIC, INC., | |
| Defendant. | |

**COMPLAINT**

Plaintiff Light & Wonder, Inc. ("L&W" or "Plaintiff") alleges the following for its Complaint against Defendant Twin States Music, Inc. ("Twin States Music" or "Defendant").

**NATURE OF THE CASE**

1.      Plaintiff is a global leader in the gaming, online gaming and social gaming industries—manufacturing, marketing, leasing, and selling electronic slot machines and slot machine software as well as distributing and offering for play and for sale online wagering and online social gaming. Plaintiff's ULTIMATE FIRE LINK game machines and software are among one of Plaintiff's most popular offerings.

2.      Plaintiff has invested heavily in its intellectual property rights in connection with its ULTIMATE FIRE LINK game machines and software, including owning numerous trademarks and copyrights.

3.      Rather than compete fairly with Plaintiff, Defendant has sought to capitalize on the success of Plaintiff's ULTIMATE FIRE LINK game machines and software by offering for sale and selling gaming machines utilizing Plaintiff's federally protected intellectual property rights,

including trademark and copyright rights, in Plaintiff's ULTIMATE FIRE LINK gaming machines and software.

4.     Plaintiff seeks monetary and injunctive relief against Defendant for numerous causes of action, including (i) copyright infringement, in violation of 17 U.S.C. §§ 106, 501; (ii) trademark counterfeiting, in violation of 15 U.S.C. § 1114; (iii) trademark infringement, in violation of 15 U.S.C. § 1114; (iv) unfair competition and false designation of origin, in violation of 15 U.S.C. § 1125; and (v) common law trademark infringement and unfair competition.

## THE PARTIES

5.     Plaintiff Light & Wonder, Inc., formerly known as Scientific Games Corporation, is a Nevada corporation with a principal place of business located at 6601 Bermuda Road, Las Vegas, Nevada 89119.

6.     Upon information and belief, Defendant Twin States Music, Inc. is a Wisconsin corporation with a principal place of business at 1811 Okeefe Road, Hudson, WI 54016.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over the claims in this action that arise under the Lanham Act and Copyright Act pursuant to 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121.

8.     This Court has supplemental jurisdiction over the claims in this action which arise under state common law pursuant to 28 U.S.C. § 1367(a), since the state common law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

9.     This Court has personal jurisdiction over Defendant because, on information and belief, Defendant resides in this district, has distributed, offered for sale, or sold infringing

products within this State and this district, has committed tortious acts within this State and this district, and has otherwise established contacts within this State and this district sufficient to permit the exercise of general and specific jurisdiction.

10.    Venue is proper in this judicial district under 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district, and under the provision of 28 U.S.C. § 1400(a), because Defendant resides in this district.

## FACTUAL ALLEGATIONS

### I.    L&W's Business

11.    L&W, and its affiliates, are global leaders in the gaming, online gaming and social gaming industries. L&W manufactures, markets, leases, and sells electronic slot machines, as well as gaming software used by those machines and the online wagering and social versions of the same.

12.    For more than 85 years, L&W and its predecessors have delivered what customers and players value most: trusted security, creative content, operating efficiencies, and innovative technology. L&W offers customers a fully integrated portfolio of technology platforms, robust systems, engaging game content, and unrivaled professional services and marketing solutions.

13.    L&W and its competitors must be licensed by regulatory bodies in a variety of jurisdictions within the United States and around the world to qualify to manufacture, sell, lease, and distribute gaming machines and gaming software. L&W therefore is subject to continuous review by these regulatory bodies to maintain these licenses. Compliance with industry licensing and regulatory requirements is a material consideration for potential purchasers or lessors of gaming machines and the software run on those machines.

14.    L&W must submit each gaming machine (including the related gaming software) it develops for regulatory approval. Regulators' scrutiny does not cease once L&W's machines and gaming software have successfully navigated the initial regulatory review process. Instead, the manufacturing and transportation of the gaming machines to casinos and/or companies is a highly regulated and secure process, requiring tracking by serial numbers of each gaming machine and its associated programmed storage media. These steps are necessary to ensure that unlicensed entities do not misappropriate the machines or components of them for unlawful sale and reproduction without the regulation necessary to ensure integrity in the industry.

15.    The casinos and/or companies taking delivery of L&W's gaming machines and associated gaming software also are heavily regulated. Casinos and/or companies wishing to purchase or lease L&W's gaming machines must be properly licensed by regulatory authorities. L&W cannot sell or lease its gaming machines or software to entities not licensed or otherwise permitted to purchase or possess the necessary licenses.

16.    If a gaming machine, chip, or its software does not comply with applicable licensing and other regulatory requirements, the consequences can be significant. On the one hand, a machine that pays out more than it is programmed to do may expose its manufacturer to claims for indemnification from the manufacturer's customers. On the other hand, a machine that does not pay out as it has been approved to do may subject the manufacturer to regulatory penalties. In either case, the manufacturer's reputation would suffer irreparable harm.

## II.    L&W's Intellectual Property

17.    L&W is the owner of numerous trademark registrations with the United States Patent & Trademark Office in connection with its ULTIMATE FIRE LINK gaming machines and software, including, but not limited to, BY THE BAY (Reg. No. 5476762); CHINA STREET

(Reg. No. 5476760); GLACIER GOLD (Reg. No. 5487837); NORTH SHORE (Reg. No. 6091789); OLVERA STREET (Reg. No. 5476761); RUE ROYALE (Reg. No. 5886278); ULTIMATE FIRE LINK ROUTE 66 (Reg. No. 5909084); RIVER WALK (Reg. No. 7906945); and ULTIMATE FIRE LINK (Reg. No. 5347504). A true and correct copy of these trademark certificates of registration are attached hereto as **Exhibit A** (hereinafter collectively referred to as "ULTIMATE FIRE LINK Trademarks").[1]

18.     The ULTIMATE FIRE LINK Trademarks were issued by the U.S. Patent and Trademark Office and constitute prima facie evidence of L&W's exclusive right to use the marks in commerce in connection with the goods covered by the registrations.

19.     Both itself and through a predecessor, L&W has marketed, sold, and leased computer software and firmware for playing games of chance on computerized platforms and gaming machines under various ULTIMATE FIRE LINK Trademarks since September 2016.

20.     L&W has continuously used the ULTIMATE FIRE LINK Trademarks in commerce since the marks' introductions, and goods associated with the marks have been widely promoted, sold, and leased to numerous customers throughout the United States. The goods covered by the ULTIMATE FIRE LINK Trademarks are not distributed for use separate from use on L&W's electronic slot machines. Instead, individual end users can expect to encounter goods associated with the ULTIMATE FIRE LINK Trademarks only when playing electronic slot machines bearing the marks. *See* Figure 1.

---

[1] While the Certificates of Registration for the ULTIMATE FIRE LINK Trademarks list the owners as either SG Gaming, Inc. or Bally Gaming, Inc., all the ULTIMATE FIRE LINK Trademarks were subsequently assigned to L&W and those assignments were properly recorded with the United State Patent & Trademark Office at Reel/Frame No. 7932/0565, such that L&W is the current registered owner of the ULTIMATE FIRE LINK Trademarks.

21.    The ULTIMATE FIRE LINK software is only authorized to run on specific approved gaming machine cabinets. L&W does not offer for sale, distribute, or manufacture gaming machine cabinets with ULTIMATE FIRE LINK software that contain multiple ULTIMATE FIRE LINK game titles.

22.    L&W has made significant expenditures in promoting and marketing goods provided under the ULTIMATE FIRE LINK Trademarks in many forms of media. Because of L&W's exclusive use and promotion of the ULTIMATE FIRE LINK Trademarks in connection with the goods sold under the marks, L&W has built up and now owns tremendously valuable goodwill symbolized by the marks.

23.    The ULTIMATE FIRE LINK Trademarks are widely recognized by the public as an indicator of the source of L&W's goods. They are both inherently distinctive and commercially strong.

24.    The ULTIMATE FIRE LINK Trademarks are in full force and effect, and many have become incontestable pursuant to 15 U.S.C. § 1065.

25.    L&W has gone and continues to go to great lengths to enforce its ULTIMATE FIRE LINK Trademarks. L&W routinely sends cease and desist letters and takedown notices for unauthorized use of its ULTIMATE FIRE LINK Trademarks and copyrighted graphics and also partners with law enforcement to address counterfeit ULTIMATE FIRE LINK games.

26.    L&W also owns the entire right, title, and interest in and to original works of art in connection with the ULTIMATE FIRE LINK gaming machine and software graphics. L&W has duly registered its copyright rights in the ULTIMATE FIRE LINK gaming machine and software 2-D visual artworks, including: ULTIMATE FIRE LINK (Reg. No. VA 2-045-097); BY THE BAY (Reg. No. VA 2-098-046); ULTIMATE FIRE LINK CHINA STREET (Reg. No. VA 2-398-

909); GLACIER GOLD (Reg. No. VA 2-098-040); OLVERA STREET (Reg. No. VA 2-098-047); ULTIMATE FIRE LINK ROUTE 66 (Reg. No. VA 2-148-179); ULTIMATE FIRE LINK RUE ROYALE (Reg. No. VA 2-158-632); ULTIMATE FIRE LINK RIVER WALK (Reg. No. VA 2-202-527); and ULTIMATE FIRE LINK NORTH SHORE (Reg. No. VA 2-202-531). A true and correct copy of these copyright certificates of registration are attached hereto as **Exhibit B** (hereinafter collectively referred to as the "ULTIMATE FIRE LINK Copyrights").[2]

### III.    Defendant's Counterfeiting & Infringing Activities

27.    Upon information and belief, Defendant is in the business of selling and/or leasing, distributing, and servicing gaming and amusement machines, including slot machines, in Wisconsin.

28.    Upon information and belief, Defendant acquires gaming-related goods through unauthorized channels and resells and/or leases them to businesses who then offer them for consumer use.

29.    In 2025, Plaintiff became aware of Defendant's use of the ULTIMATE FIRE LINK Trademarks and ULTIMATE FIRE LINK Copyrights. Plaintiff observed gaming machines at multiple businesses in Wisconsin that displayed the ULTIMATE FIRE LINK Trademarks and ULTIMATE FIRE LINK Copyrights. These machines contained signage indicating that the machines originated from Twin States Music as seen in Figures 1-4 below.

---

[2] While some of the Certificates of Registration for the ULTIMATE FIRE LINK Copyrights list the owner as Bally Gaming, Inc., all of those ULTIMATE FIRE LINK Copyrights were subsequently assigned to L&W and those assignments were properly recorded with the United State Copyright Office at V15017D919 on August 16, 2023, such that L&W is the current registered owner of the ULTIMATE FIRE LINK Copyrights.



*Figures 1-4: Twin States Music counterfeit gaming machines*

30.     The gaming machine cabinets being sold and/or leased by Defendants are not manufactured by Plaintiff and are not authorized and approved cabinets for the ULTIMATE FIRE LINK software.

8

31.     The unauthorized ULTIMATE FIRE LINK software sold by Defendant uses identical or substantially indistinguishable copies of the ULTIMATE FIRE LINK Trademarks and ULTIMATE FIRE LINK Copyrights as seen in Figures 5-6 below.



| Figure 5: L&W's Ultimate Fire Link gaming machine | Figure 6: Twin States Music counterfeit gaming machine |

*Figure 5: L&W's Ultimate Fire Link gaming machine*   *Figure 6: Twin States Music counterfeit gaming machine*

32.     On September 11, 2025, Plaintiff sent Defendant a cease and desist letter regarding its infringement of the ULTIMATE FIRE LINK Trademarks and ULTIMATE FIRE LINK Copyrights.

33.     Defendant has infringed and, on information and belief, continues to infringe the ULTIMATE FIRE LINK Trademarks and ULTIMATE FIRE LINK Copyrights by manufacturing, distributing, and selling or leasing gaming machines that contain Plaintiff's ULTIMATE FIRE

LINK software and use the ULTIMATE FIRE LINK Trademarks and ULTIMATE FIRE LINK Copyrights. The gaming machines, which are being manufactured, distributed, and sold or leased by Defendant, bear unauthorized copies of Plaintiff's ULTIMATE FIRE LINK Trademarks and ULTIMATE FIRE LINK Copyrights.

34.    Use by Defendant of copies of Plaintiff's ULTIMATE FIRE LINK Trademarks and ULTIMATE FIRE LINK Copyrights has been without Plaintiff's consent, is likely to cause confusion and mistake in the minds of the purchasing public, and, in particular, tends to- and does-falsely create the impression that the goods sold by Defendant are authorized, sponsored, or approved by Plaintiff when, in fact, they are not.

35.    Defendant's copying and displaying of Plaintiff's innovative 2-D visual design of the ULTIMATE FIRE LINK copyrighted works was for Defendant's own profit, without consent of, license from, or compensation to Plaintiff.

36.    Defendant's counterfeiting and infringing activities constitute unauthorized public display and distribution of Plaintiff's ULTIMATE FIRE LINK Trademarks and ULTIMATE FIRE LINK Copyrights.

37.    The unlicensed nature of the ULTIMATE FIRE LINK software in the unauthorized gaming machine cabinets sold and/or leased by Defendant renders it materially different from its authorized counterparts. Moreover, Defendant is not an authorized seller or distributor of ULTIMATE FIRE LINK software. Plaintiff did not authorize Defendant to use the unapproved gaming machine cabinets, nor did it authorize Defendant to sell the gaming machine cabinets with ULTIMATE FIRE LINK software containing multiple ULTIMATE FIRE LINK game titles.

38.    Long after Plaintiff's use and registration of the ULTIMATE FIRE LINK Trademarks and ULTIMATE FIRE LINK Copyrights, Defendant, on information and belief,

commenced the manufacture, distribution, and/or sale of gaming machines bearing counterfeits and infringements of Plaintiff's ULTIMATE FIRE LINK Trademarks, as well as infringing Plaintiff's ULTIMATE FIRE LINK Copyrights protecting the innovative 2-D visual artwork design of the ULTIMATE FIRE LINK gaming software displayed on gaming machines.

39.    Upon information and belief, the activities of Defendant complained of herein constitute willful and intentional infringement of Plaintiff's ULTIMATE FIRE LINK Trademarks and ULTIMATE FIRE LINK Copyrights, are in total disregard of Plaintiff's rights, and were commenced and have continued in spite of Defendant's knowledge that the use of any of Plaintiff's ULTIMATE FIRE LINK Trademarks and ULTIMATE FIRE LINK Copyrights, or copies or colorable imitations thereof, was and is in direct contravention of Plaintiff's rights.

40.    Upon information and belief, the activities of Defendant complained of herein are also in violation of gaming regulations and requirements which Plaintiff must abide by.

41.    Defendant's conduct therefore is causing immediate and irreparable injury to Plaintiff and will continue to damage Plaintiff and will deceive the public unless enjoined by this Court.

## COUNT I
## COPYRIGHT INFRINGEMENT
### (*Copyright Infringement, 17 U.S.C. §§ 106, 501*)

42.    Plaintiff repeats and realleges the allegations of the previous paragraphs as though fully set forth herein.

43.    Plaintiff owns the copyright registrations for the ULTIMATE FIRE LINK Copyrights listed in Exhibit B.

44.    Plaintiff is the holder of all exclusive rights under the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, and all amendments thereto, to reproduce, distribute, and otherwise exploit Plaintiff's ULTIMATE FIRE LINK Copyrights throughout the United States.

45.    Defendant's actions, as set forth herein, constitute copyright infringement under the Copyright Act, 17 U.S.C. §§ 106, 501.

46.    Plaintiff has not granted Defendant a license or the right to use the ULTIMATE FIRE LINK Copyrights in any manner, nor has Plaintiff assigned any of its exclusive rights in the ULTIMATE FIRE LINK Copyrights to Defendant.

47.    Upon information and belief, Defendant improperly and illegally copied, produced, reproduced, distributed, adapted, prepared derivative works based upon, and/or publicly displayed the ULTIMATE FIRE LINK Copyrights, without permission or authorization from Plaintiff and in willful violation of Plaintiff's rights under 17 U.S.C. § 106. Defendant's acts violate Plaintiff's exclusive rights under the Copyright Act, 17 U.S.C. §§ 106 and 501, including Plaintiff's exclusive rights to produce, reproduce, and distribute copies of its ULTIMATE FIRE LINK Copyrights, to create derivative works, and to publicly display its ULTIMATE FIRE LINK works.

48.    Defendant's infringement has been undertaken knowingly, and with intent to financially gain from Plaintiff's protected copyrighted works. Defendant has failed to exercise its right and ability to supervise persons within its control to prevent infringement, and it did so with the intent to further its financial interest in the infringement of Plaintiff's ULTIMATE FIRE LINK Copyrights. Accordingly, Defendant has directly infringed Plaintiff's ULTIMATE FIRE LINK Copyrights.

49.    Defendant's reproduction, public display, and distribution of the gaming machines constitutes intentional, willful infringement of Plaintiff's ULTIMATE FIRE LINK Copyrights, in

violation of 17 U.S.C. § 501. Such conduct entitles Plaintiff to damages, including disgorgement of profits, or, at Plaintiff's election, statutory damages up to $150,000 per infringed work, under 17 U.S.C. § 504.

50.     Defendant's infringement has also caused, and unless enjoined will continue to cause, serious and irreparable injury and harm to Plaintiff, entitling Plaintiff to injunctive relief pursuant to 17 U.S.C. § 502.

## COUNT II
## FEDERAL TRADEMARK COUNTERFEITING
### (*Lanham Act, 15 U.S.C. § 1114*)

51.     Plaintiff repeats and realleges the allegations of the previous paragraphs as though fully set forth herein.

52.     Defendant is using spurious trademarks and/or designations that are identical to, or substantially indistinguishable from, Plaintiff's ULTIMATE FIRE LINK Trademarks on goods covered by registrations for Plaintiff's ULTIMATE FIRE LINK Trademarks.

53.     Defendant is intentionally and willfully using spurious trademarks and/or designations knowing they are counterfeit in connection with the advertising, sale, and offering for sale and distribution of counterfeit goods for its own personal financial gain and such intentional and willful conduct by the Defendant makes this an exceptional case.

54.     Defendant's use of Plaintiff's ULTIMATE FIRE LINK Trademarks to advertise, offer for sale, sell, and distribute Defendant's counterfeit products was and is without the consent of Plaintiff.

55.     Defendant's unauthorized use of Plaintiff's ULTIMATE FIRE LINK Trademarks on and in connection with the advertising and sale of counterfeit goods constitutes Defendant's use of Plaintiff's ULTIMATE FIRE LINK Trademarks in commerce.

56.    Defendant's unauthorized use of Plaintiff's ULTIMATE FIRE LINK Trademarks as set forth above is likely to:

    a.   Cause confusion, mistake, and deception;

    b.   Cause consumers to believe that Defendant's counterfeit gaming machines and software are the same as Plaintiff's gaming machines and software, and/or believe that Defendant is authorized, sponsored, or approved by Plaintiff and/or cause consumers to believe that Defendant is affiliated, connected, or associated with or in some way related to Plaintiff; and

    c.   Result in Defendant's unfairly benefiting from Plaintiff's advertising and promotion, and profiting from the reputation of Plaintiff and Plaintiff's ULTIMATE FIRE LINK Trademarks.

57.    As a result, Defendant's unauthorized use of Plaintiff's ULTIMATE FIRE LINK Trademarks is likely to cause substantial and irreparable injury to the public, Plaintiff, and Plaintiff's ULTIMATE FIRE LINK Trademarks, including the substantial goodwill represented thereby.

58.    Upon information and belief, Defendant has made and will continue to make substantial profits or gains to which they are not entitled in law or equity.

59.    Defendant's acts are set forth herein constitute trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

60.    Defendant's acts as set forth herein further constitute willful trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114. Such conduct entitles Plaintiff to injunctive relief, compensatory damages, treble damages, disgorgement of profits, and costs and attorneys' fees or, at Plaintiff's election, statutory damages up to $2,000,000

per counterfeit mark per type of goods advertised, sold, and/or offered for sale, under 15. U.S.C. § 1117(c)(2).

## COUNT III
## FEDERAL TRADEMARK INFRINGEMENT
### (*Lanham Act, 15 U.S.C. § 1114*)

61.    Plaintiff repeats and realleges the allegations of the previous paragraphs as though fully set forth herein.

62.    Plaintiff owns the U.S. trademark registrations for the ULTIMATE FIRE LINK Trademarks listed in Exhibit A.

63.    Defendant's use of Plaintiff's ULTIMATE FIRE LINK Trademarks to promote the sale of goods differing materially from authorized goods sold under the ULTIMATE FIRE LINK Trademarks by Plaintiff is likely to cause confusion, deception, and mistake by creating the false and misleading impression that those goods are materially identical to their authorized counterparts.

64.    Defendant's use of the ULTIMATE FIRE LINK Trademarks violates Section 32 of the federal Lanham Act, 15 U.S.C. § 1114, and Defendant's activities have caused and, unless enjoined by this Court, will continue to cause, a likelihood of confusion and deception of members of the trade and public and, additionally, injury to Plaintiff's goodwill and reputation as symbolized by the ULTIMATE FIRE LINK Trademarks, for which Plaintiff has no adequate remedy at law.

65.    Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's ULTIMATE FIRE LINK Trademarks, to Plaintiff's great and irreparable injury.

66.     Defendant has caused, and is likely to continue causing, substantial injury to the public and to Plaintiff, and Plaintiff is entitled to injunctive relief and to recover Defendant's profits, as well as Plaintiff's actual damages, costs, and reasonable attorney's fees under 15 U.S.C. §§ 1114, 1116, and 1117.

**COUNT IV**
**FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN**
**(*Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)*)**

67.     Plaintiff repeats and realleges the allegations of the previous paragraphs as though fully set forth herein.

68.     Defendant is using Plaintiff's ULTIMATE FIRE LINK Trademarks in connection with unlicensed and unauthorized goods that differ in material respects from the goods' authorized counterparts. This conduct is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Defendant's unlicensed and unauthorized goods are associated or connected with Plaintiff, or have the sponsorship, endorsement, or approval of Plaintiff.

69.     Defendant therefore has used confusingly similar imitations of Plaintiff's ULTIMATE FIRE LINK Trademarks, and Defendant's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public and, additionally, injury to Plaintiff's goodwill and reputation as symbolized by Plaintiff's ULTIMATE FIRE LINK Trademarks, for which Plaintiff has no adequate remedy at law.

70.     Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's ULTIMATE FIRE LINK Trademarks to Plaintiff's great and irreparable injury.

16

71.    Defendant has caused and is likely to continue causing substantial injury to the public and to Plaintiff, and Plaintiff is entitled to an accounting of Defendant's profits, as well as to injunctive relief, its actual damages, its costs, and its reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

## COUNT V
## COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

72.    Plaintiff repeats and realleges the allegations of the previous paragraphs as though fully set forth herein.

73.    Defendant's wrongful conduct, as alleged herein, constitutes common law trademark infringement and unfair competition.

74.    Plaintiff is without adequate remedy at law, as Defendant's acts have caused Plaintiff irreparable harm to its business reputation, goodwill, and stature in the business community.

75.    Plaintiff is informed and believes, and therefore alleges, that Defendant committed the above alleged acts oppressively, fraudulently, maliciously, and in conscious disregard of Plaintiff's rights, and Plaintiff is therefore entitled to exemplary and punitive damages pursuant to the common law of the State of Wisconsin in an amount sufficient to punish, deter, and make an example of Defendant.

76.    The manufacture, distribution, and sale of the unauthorized and infringing products by Defendant is without any permission, license, or other authorization from Plaintiff. The said unauthorized products are being distributed and sold in interstate commerce.

77.    Plaintiff has no adequate remedy at law and is suffering irreparable harm and damage as a result of the aforesaid acts of Defendant in an amount thus far not determined or

ascertainable. At a minimum, however, Plaintiff is entitled to injunctive relief, to an accounting of Defendant's profits, to Plaintiff's damages, and to Plaintiff's costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff hereby respectfully requests that this Court grant the following relief:

I. That preliminary and permanent injunctions be issued enjoining and restraining Defendant and its officers, agents, servants, employees, and attorneys and all those in active concert or participation with them, from:

 A. Using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's ULTIMATE FIRE LINK Trademarks to identify any goods or the rendering of any services not authorized by Plaintiff;

 B. Using any reproduction, copy or colorable imitation of Plaintiff's ULTIMATE FIRE LINK Copyrights not authorized by Plaintiff;

 C. Engaging in any course of conduct likely to cause confusion, deception, or mistake, or to injure Plaintiffs' business reputation;

 D. Using a false description or representation including words or other symbols tending to falsely describe or represent Defendant's unauthorized goods as being those of Plaintiff's or sponsored by or associated with Plaintiff and from offering such goods into commerce;

 E. Further infringing Plaintiff's ULTIMATE FIRE LINK Trademarks by manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting, displaying, or otherwise disposing of any products not authorized by Plaintiff bearing any simulation, reproduction,

counterfeit, copy or colorable imitation of ULTIMATE FIRE LINK Trademarks;

F.  Using any simulation, reproduction, counterfeit, copy or colorable imitation of Plaintiff's ULTIMATE FIRE LINK Trademarks in connection with the rental, promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any unauthorized products in such fashion as to relate or connect, or tend to relate or connect, such products in any way to Plaintiff, or to any goods sold, manufactured, sponsored or approved by, or connected with Plaintiff;

G.  Making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which can or is likely to lead the trade or public, or individual members thereof, to believe that any products manufactured, distributed, sold or rented by Defendant is in any manner associated or connected with Plaintiff, or is sold, manufactured, licensed, sponsored, approved or authorized by Plaintiff;

H.  Secreting, destroying, altering, removing, or otherwise dealing with the unauthorized products or any books or records which contain any information relating to the importing, manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting or displaying of all unauthorized products which infringe Plaintiff's ULTIMATE FIRE LINK Trademarks or ULTIMATE FIRE LINK Copyrights;

I.  Selling, offering for sale, or advertising any merchandise bearing Plaintiff's ULTIMATE FIRE LINK Trademarks or ULTIMATE FIRE LINK Copyrights

on the Internet or in e-commerce, including but not limited to all forms of social
media; and

J.  Effecting assignments or transfers, forming new entities or associations or
utilizing any other device for the purpose of circumventing or otherwise
avoiding the prohibitions set forth in subparagraphs (A) through (I).

II.  Directing that Defendant be ordered to recall and deliver up for destruction to
Plaintiff all unauthorized products bearing, or sold under, the ULTIMATE FIRE LINK
Trademarks, or containing or embodying copies of the ULTIMATE FIRE LINK Copyrights,
which have been shipped by Defendant or under their authority, to any customer, including but not
limited to, any wholesaler, distributor, retailer, consignor, or marketer, and also to deliver to each
customer a copy of this Court's order as it relates to the injunctive relief against Defendant;

III.  Directing that Defendant be ordered to deliver up for destruction all products, bags,
boxes, labels, tags, signs, packages, receptacles, advertising, sample books, promotional material,
stationary or other materials in the possession, custody, or under the control of Defendant that are
found to infringe the ULTIMATE FIRE LINK Trademarks or ULTIMATE FIRE LINK
Copyrights or that otherwise unfairly compete with Plaintiff and its products;

IV.  Directing such other relief as the Court may deem appropriate to prevent the trade
and public from deriving any erroneous impression that any products manufactured, sold or
otherwise circulated or promoted by Defendant are authorized by Plaintiff or related in any way to
Plaintiff's products.

V.  Directing Defendant to supply Plaintiff with the name and address of each person
or entity from whom or from which Defendant has purchased any item bearing ULTIMATE FIRE

LINK Trademarks or ULTIMATE FIRE LINK Copyrights, including copies of all records and receipts of the aforementioned sales.

VI.    Directing Defendant, within thirty (30) days after the service of judgment upon it, with notice of entry thereof, to file with the Court, and serve upon Plaintiff, a written report under oath setting forth in detail the manner in which Defendant has complied with paragraphs I through V above.

VII.    Awarding to Plaintiff statutory damages of $2,000,000 per counterfeit mark, per type of counterfeit good in accordance with Section 35 of the Lanham Act, 15 US.C. § 1117(c), or alternatively, ordering Defendant to account to and pay Plaintiff all profits realized by Defendant's counterfeiting and infringement of the ULTIMATE FIRE LINK Trademarks and also awarding Plaintiff for its actual damages, and directing that such profits and actual damages be trebled, including prejudgment interest on the foregoing sums.

VIII.    Awarding to Plaintiff statutory damages of $150,000 per infringed work, in accordance with 17 U.S.C. § 504, or alternatively, ordering Defendant to account to and pay Plaintiff all profits realized by Defendant's infringement of the ULTIMATE FIRE LINK Copyrights and also awarding Plaintiff for its actual damages, including prejudgment interest thereon.

IX.    Directing Defendant to account to Plaintiff for and to disgorge to Plaintiff all profits derived by Defendant from sales of the goods infringing the ULTIMATE FIRE LINK Trademarks and ULTIMATE FIRE LINK Copyrights or any other products made, sold, or in the possession of the Defendant that infringe Plaintiff's intellectual property rights as enumerated herein, including prejudgment interest thereon.

X.      Ordering that Plaintiff recover the costs of this action together with reasonable attorneys' and investigators' fees and prejudgment interest in accordance with 15 U.S.C. § 1117 and 17 U.S.C. § 505.

XI.     Directing that this Court retain jurisdiction of this action for the purpose of enabling Plaintiff to apply to the Court at any time for such further orders and interpretation or execution of any order entered in this action, for the modification of any such order, for the enforcement or compliance therewith and for the punishment of any violations thereof.

XII.    Awarding to Plaintiff such other and further relief as the Court may deem just and proper, together with the costs and disbursements which Plaintiff has incurred in connection with this action.

## JURY TRIAL DEMAND

Plaintiff respectfully demands a trial by jury on all claims and issues so triable.

Dated this 3rd day of November, 2025.          Respectfully submitted,


*s/ Jenna L. Riddle*

**BAKER & HOSTETLER LLP**
Robertson D. Beckerlegge, NY SBN: 3935046
Megan A. Corrigan, NY SBN: 5693189
489 Rockefeller Plaza
New York, NY 10111
Phone: 212-589-4200
rbeckerlegge@bakerlaw.com
mcorrigan@bakerlaw.com

**GODFREY & KAHN, S.C.**
Brian G. Gilpin, SBN: 1029504
833 East Michigan Street, Suite 1800
Milwaukee, WI 53202
Phone: 414-273-3500
bgilpin@gklaw.com

Jennifer L. Gregor, SBN: 1078174
Jenna L. Riddle, SBN: 1129373
One East Main Street, Suite 500
Madison, WI 53703
Phone: 608-257-3911
jgregor@gklaw.com
jriddle@gklaw.com


*Attorneys for Plaintiff, Light & Wonder, Inc.*